IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

**GERALDO RODRIGUEZ ON BEHALF OF HIS MINOR DAUGHTER JENNIFER RODRIGUEZ**

    **Plaintiff,**

    v.

**COMMONWEALTH OF PUERTO RICO, et al.,**

    **Defendants.**

Civil No. 09-1440 (GAG)

## OPINION AND ORDER

Plaintiff in this case, Jennifer Rodriguez ("Plaintiff"), brought suit against the Commonwealth of Puerto Rico ("Commonwealth"); Superintendent Jose Figueroa-Sancha ("Figueroa-Sancha") in his official capacity; and Sergeant Samuel Rodriguez ("Rodriguez") in his official and individual capacity. Plaintiff's suit alleged acts of negligence against all named defendants, pursuant to Article 1802 of the Civil Code of Puerto Rico ("Article 1802"), P.R. Laws Ann. tit. 31, § 5141. Plaintiff invoked the diversity jurisdiction of this court as there was complete diversity among the named parties and the amount in controversy was greater than $75,000. On February 22, 2010, the court dismissed the claims against the Commonwealth and Figueroa-Sancha on grounds of Eleventh Amendment immunity. (See Docket No. 31.)

Presently before the court is the remaining defendant Samuel Rodriguez's motion for summary judgment (Docket No. 51). Plaintiff timely opposed this motion (Docket No. 61). After reviewing these submissions and the pertinent law, the court **DENIES** the defendants' motion for summary judgment.

**I.**     **Standard of Review**

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

**Civil No. 09-1440 (GAG)**                                                    2

genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). "An issue is genuine if 'it may reasonably be resolved in favor of either party' at trial, and material if it 'possess[es] the capacity to sway the outcome of the litigation under the applicable law.'" Iverson v. City of Boston, 452 F.3d 94, 98 (1st Cir. 2006) (alteration in original) (citations omitted). The moving party bears the initial burden of demonstrating the lack of evidence to support the non-moving party's case. Celotex, 477 U.S. at 325. "The movant must aver an absence of evidence to support the nonmoving party's case. The burden then shifts to the nonmovant to establish the existence of at least one fact issue which is both genuine and material." Maldonado-Denis v. Castillo-Rodriguez, 23 F.3d 576, 581 (1st Cir. 1994). The nonmoving party must then "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). If the court finds that some genuine factual issue remains, the resolution of which could affect the outcome of the case, then the court must deny summary judgment. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

When considering a motion for summary judgment, the court must view the evidence in the light most favorable to the non-moving party (here, the plaintiff) and give that party the benefit of any and all reasonable inferences. Id. at 255. Moreover, at the summary judgment stage, the court does not make credibility determinations or weigh the evidence. Id. Summary judgment may be appropriate, however, if the non-moving party's case rests merely upon "conclusory allegations, improbable inferences, and unsupported speculation." Forestier Fradera v. Municipality of Mayaguez, 440 F.3d 17, 21 (1st Cir. 2006) (quoting Benoit v. Technical Mfg. Corp., 331 F.3d 166, 173 (1st Cir. 2003)).

**II.    Relevant Factual & Procedural Background**

Plaintiff is the minor daughter of Luz Rosado-Aponte and Geraldo Rodriguez. Plaintiff currently resides in the state of Illinois. Luz Rosado-Aponte ("Luz") was a resident of Illinois where she lived with her husband Domingo Barrera ("Domingo") and their two minor children Matthew and Blassa. During Luz's marriage to Domingo there were many documented incidents of abuse.

**Civil No. 09-1440 (GAG)**                3

By March 2008, this abuse led her to procure and obtain an order of protection against Domingo, which prevented him from harassing, physically abusing, stalking or intimidating her and/or her children. The order, issued by the state of Illinois, notified that it was enforceable, even without registration, in all the fifty states, the District of Columbia, tribal lands, and the U.S. territories pursuant to the Violence Against Women Act, 18 U.S.C. § 2265.

Following her receipt of the protective order, Luz moved with her children to Puerto Rico to live with her parents Lucrecia Aponte ("Lucrecia") and Manuel Rosado ("Manuel") (collectively "Luz's parents") in April 2008. Domingo moved to Puerto Rico soon after and temporarily lived in the municipality of Juana Diaz at the home of Gene and Jesus Manuel Pagan Domingo.

On April 22, 2008, Domingo arrived outside of Luz's parents' home and was asked not to enter. Luz's parents called the Puerto Rico Police Department ("PRPD") and asked that they offer protection for Luz and her children. Among the responding officers was Sergeant Samuel Rodriguez. Lucrecia showed the protective order to the responding police officers. The officers removed Domingo from the premises and took him to a motel but took no further action regarding the Illinois order of protection.

On April 23, 2008, Lucrecia and Manuel drove to the court in Juana Diaz to request an order of protection under the stalking act of Puerto Rico. The petition for protection was denied by the court as was the request to enforce the Illinois order of protection. The presiding judge informed them that she could not issue this order for a single incident.

On May 18, 2008, Luz, Domingo, and their children were found dead at the home of Gene and Jesus Manuel Pagan. The investigation regarding their deaths concluded that Domingo murdered Luz and their children and later committed suicide.

Plaintiff filed the instant action on May 16, 2009, alleging that the Puerto Rico Police Department was negligent in failing to enforce the Illinois order of protection. The complaint specifically named Jose Figueroa-Sancha, in his official capacity as Commisioner of the Puerto Rico Police Department and Samuel Rodriguez, in his official and personal capacity, as co-defendants.

**Civil No. 09-1440 (GAG)**                              4

The court dismissed all claims against the Commonwealth, as well as the claims against the individual defendants in their official capacities. The only remaining claim before this court is against co-defendant Rodriguez in his personal capacity. Luz's parents, Lucrecia and Manuel, have a parallel action pending in state court, which contains similar allegations against the defendants named in the instant action.

**III.    Discussion**

Defendant Rodriguez moves for summary judgment on two grounds. As his first ground for dismissal, Rodriguez contends that this court lacks jurisdiction to hear Plaintiff's case as Lucrecia and Manuel are indispensable parties to the litigation and therefore must be joined to protect their interests. The joinder of these parties would destroy the complete diversity, therefore stripping this court of jurisdiction to hear Plaintiff's claim. As his other grounds for dismissal, Rodriguez argues that Plaintiff has failed to state a valid tort claim under Article 1802. Each of these arguments will be considered in turn.

**A.    Lack of Jurisdiction**

Diversity jurisdiction in the federal courts requires complete diversity between all of the plaintiffs and defendants. Halleran v. Hoffman, 966 F.2d 45, 47 (1st Cir. 1992). The presence of one non-diverse party divests the court of jurisdiction over the entire action. In re Olympic Mills Corp, 477 F.3d 1, 6 (1st Cir. 2007).

Plaintiff is domiciled in Illinois, while Rodriguez, the sole remaining defendant, is domiciled in Puerto Rico. Thus, complete diversity exists among the present parties. However, Rodriguez contends that the court cannot retain diversity jurisdiction over the instant case as Lucrecia and Manuel, both domiciliaries of Puerto Rico, are indispensable parties to the litigation under Rule 19(b) of the Federal Rules of Civil Procedure and their necessary joinder would thus divest the court of its jurisdiction.

Parties should be joined, when feasible, if they are "necessary" to the action according to the criteria laid out in Rule 19(a). See Fed.R.Civ.P. 19(a). If a necessary party cannot be joined in the

**Civil No. 09-1440 (GAG)**                                5

action without divesting the court of subject-matter jurisdiction, Rule 19(b) provides additional criteria for determining whether the necessary party is "indispensable." If a party is found to be indispensable, the court must dismiss the case. See B. Fernandez & HNOS, Inc. v. Kellogg USA, Inc., 516 F.3d 18, 23 (1st Cir. 2008). Federal Rule of Civil Procedure 19(b) specifies four factors to guide the indispensability inquiry. These include:

> (1) To what extent a judgment rendered in the person's absence might be prejudicial to the person or those already parties; (2) the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; (3) whether a judgment rendered in the person's absence will be adequate; (4) whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder.

Fed.R.Civ.P. 19(b). The First Circuit has recognized that no set weight is afforded to any of the factors, nor do the factors represent an exhaustive list of what should be considered. See Kellogg USA, Inc., 516 F.3d at 23 (citing Associated Dry Goods Corp. v. Towers Fin. Corp., 920 F.2d 1121, 1124 (2d Cir. 1990)). Furthermore, where the substantive rights of parties are founded on state law, it is essential that state law be examined to determine whether a party is in fact indispensable under Rule 19(b). See Provident Tradesmens Bank & Trust Co. v. Patterson, 390 U.S. 102, 124 n. 22 (1968) (the determination of whether a party is indispensable is ultimately a question of federal law, but is determined by the interests of the parties under state law).

Rodriguez asseverates that Lucrecia and Manuel are indispensable parties because any judgment that is rendered against him (Rodriguez) in the instant case will prejudice their rights in their state court action. Rodriguez's foregoing assertion is premised upon the Commonwealth's sovereign immunity and the limited waiver of that immunity under Act No. 104 of June 29, 1955, P.R. Laws Ann. tit. 32, §§ 3074 *et seq.* ("Act 104 "). Section 3077 of Act 104 reads in pertinent part:

> Authorization is hereby granted to sue the Commonwealth of Puerto Rico before the Court of First Instance of Puerto Rico for the causes set forth in the following actions: (a) Actions for damages to persons or property up to the sum of seventy-five thousand dollars ($75,000) caused by a culpable or negligent act or omission of any officer, agent or employee of the Commonwealth or of any other person acting in an official capacity within the scope of his/her duty, office or employment . . . . When because of said act or omission damages are caused to more than one person or when there are several causes of action to which a single prejudiced party is entitled, the

**Civil No. 09-1440 (GAG)**                                      6

> compensation for all damages caused by said act or omission may not exceed the sum of one hundred and fifty thousand dollars ($150,000).

P.R. Laws Ann. tit. 32, § 3077. Section 3083 confines the court's ability to grant multiple judgments for the same alleged negligent acts, stating in pertinent part that:

> the judgment entered in any action authorized by §§ 3077-3092a of this title shall preclude any other action on the part of the claimant by reason of the same issue or matter against the . . . employee whose act or omission gave rise to the action; and a judgment against the . . . employee shall, likewise, preclude any action against the Commonwealth.

Id. at § 3083. Rodriguez contends that any judgment rendered against him in the instant case would preclude Luz's parents from pursuing their suit in state court. The court disagrees with this assertion. Plaintiff's suit is against Rodriguez in his individual capacity. Therefore, Puerto Rico's sovereign immunity is not at issue, nor is its waiver of that immunity under Act 104. See Guillemard-Ginorio v. Contreras-Gomez, 585 F.3d 508, 531 (1st Cir. 2009) (citing Alden v. Maine, 527 U.S. 706, 757 (1999)) (explaining that when a plaintiff seeks money damages from a state actor "in his individual capacity," sovereign immunity does not bar the suit "so long as the relief is sought not from the [sovereign's] treasury but from the officer personally"). Furthermore, the Commonwealth's agreement to indemnify[1] Rodriguez does not trigger its sovereign immunity under the law. See Asociacion de Subscripcion Conjunta del Seguro de Responsabilidad Obligatorio v. Flores Galarza, 484 F.3d 1, 26 (1st Cir. 2007) (citing Berman Enters., Inc. v. Jorling, 3 F.3d 602, 606 (2d Cir. 1993)). As such, a judgment rendered in this case will not preclude Luz's parents from obtaining a separate judgment against the Commonwealth in state court. Luz's parents, therefore, do not meet the definition of an indispensable party under Rule 19(b) and the instant suit may

---

[1] The Commonwealth "generally indemnifies its officials for suits against them in their personal capacities." Diaz-Fonseca v. Puerto Rico, 451 F.3d 13, 37 n. 26 (1st Cir. 2006) (citing P.R. Laws Ann. tit. 32, § 3085 ("Every official . . . of the Commonwealth of Puerto Rico who is sued for damages in his personal capacity, when the cause of action is based on alleged violations of the plaintiff's civil rights, due to acts or omissions committed in good faith, in the course of his employment and within the scope of his functions, may request the Commonwealth of Puerto Rico to provide him with legal representation, and to subsequently assume the payment of any judgment that may be entered against his person.")).

**Civil No. 09-1440 (GAG)**                              7

proceed without them. Rodriguez's motion to dismiss for lack of jurisdiction is **DENIED**.

## B. Failure to State a Claim

Rodriguez also moves for summary judgment on the grounds that Plaintiff is unable to state a valid claim under Article 1802. Article 1802 provides for a cause of action stemming from an individual's negligent acts. Isla Nena Air Services, Inc. v. Cessna Aircraft Co., 449 F.3d 85, 88 (1st Cir. 2006). The statute states in pertinent part that "[a] person who by an act or omission causes damage to another through fault or negligence shall be obliged to repair the damage so done." P.R. Laws Ann. tit. 31, § 5141. A claim under Article 1802 requires that the plaintiff prove three elements: "(1) a negligent act or omission, (2) damages, and (3) a causal relationship between them." Acedvedo-Reinoso v. Iberia Lineas Aereas de Espana S.A., 449 F.3d 7, 15 (1st Cir. 2006) (quoting Irvine, IRG v. Murad Skin Research Labs., Inc., 194 F.3d 313, 321-22 (1st Cir. 1999)). When the first element is based on an omission, the defendant must have had a duty to act. Rodriguez-Quinones v. Jiminez & Ruiz, S.E., 402 F.3d 251, 254-55 (1st Cir. 2005). Furthermore, liability will only arise under the failure to act if the damages complained of were reasonably foreseeable to the defendant. Irvine, 194 F.3d at 321-22 (citations omitted). Finally, "[i]n order for liability to attach, the negligent act must be the 'adequate cause' of the harm." Tokyo Marine and Fire Ins. Co., Ltd. v. Perez & Cia., De Puerto Rico, Inc., 142 F.3d 1, 7 n. 5 (1st Cir. 1998) (citations omitted). Adequate cause is a concept similar to proximate cause. Id. (citing Puerto Rico decisions explaining "adequate cause").

Rodriguez asserts that he cannot be liable for the damages alleged by Plaintiff as he did not violate any duty owed to Plaintiff under the law. Rodriguez contends that he was unaware that the Illinois order of protection had been issued by a court with jurisdiction and that he was required to enforce said order, nor does he believe that the circumstances of April 22, 2008, required his immediate intervention. (See Docket No. 51 at 22.) He further avers that, because he does not understand the English language, he could not understand the terms of the order of protection, and therefore, did not have grounds to believe that the terms were being violated. (See Docket No. 57-5 at 3.)

**Civil No. 09-1440 (GAG)**                                    8

In order to evaluate whether or not Rodriguez had a duty to enforce the order of protection, the court must consider the totality of the circumstances at the time the duty arose. See Rodriguez-Quinones, 402 F.3d at 254-55. The order of protection issued by the State of Illinois was enforceable in accordance with 18 U.S.C. § 2265. Pursuant to this section, any protection order issued by a court with jurisdiction over the parties to the matter shall be enforced by the law enforcement personnel of any state as if it were issued by that state. 18 U.S.C. § 2265(a). At the time of the events, Police Department General Order No. 2006-4 issued by the Puerto Rico Police Superintendent ("General Order") established the rules and procedures for the enforcement of domestic violence incidents. The General Order mandates the arrest of any individual when the officer has grounds to believe that the terms of the order have been violated.[2] (See Docket No. 61-6.) Investigating officers are also required to complete an official report regarding the incident and follow up on the case. (See id.)

In his sworn statement, Rodriguez recounts the events of April 22, 2008. He testified that when he arrived at Luz's parents' home he saw Luz hugging Domingo. (See Docket No. 57-5 at 2.) He stated that Luz informed the police that Domingo had done nothing bad, that she had not called the police, and that she wanted the police to take Domingo to a hotel because he did not know the area. (See Docket No. 57-5 at 3.) Rodriguez contends that, based on these circumstances, there were no grounds to believe that the terms of the order were being violated by Domingo and, thus, no grounds existed to arrest him. Furthermore, Rodriguez claims that, even if he was obligated to enforce the order but failed to do so, there is no causal connection between his actions on April 22, 2008 and the eventual murder of Luz and her children that took place thirty two (32) days later on May 18, 2008. (See Docket No. 51 at 23.) Rodriguez testified that he personally saw Luz continue a relationship with Domingo and made no efforts to protect herself or her children from Domingo. (See Docket No. 57-5 at 7.) Therefore, Rodriguez contends that, regardless of his actions on April 22, 2008, Luz had voluntarily subjected herself to danger by continuing a relationship with Domingo.

---

[2] This action was also mandated by Article 2.8 of Law No. 54 of August 15, 1989, P.R. Laws Ann. tit. 8, §§ 601 *et seq.*, known as the "Law to Prevent and Intervene with Domestic Violence."

**Civil No. 09-1440 (GAG)**                                   9

Rodriguez also contends that Plaintiff had no relationship with either her mother or her siblings, and thus, their murders could not have affected her in a way that would require compensation. (See Docket No. 51 at 23.) In support of this contention, Rodriguez cites Plaintiff's deposition testimony (Docket No. 52-6). During her deposition, Plaintiff stated that she had not seen her mother or siblings for four years leading up to their deaths. (See Docket No. 52-6 at 9-10.) She stated that she does not remember a lot of things about her mother but knows that she did not like living with her. (See id. at 4.) She remembers that her mother would hit her everyday for no reason and recalls one incident in which her mother did nothing after Domingo threw a television at her. (See id. at 5, 14.) Plaintiff did not travel to Puerto Rico for the funeral of her mother and siblings, nor did she require professional help after their deaths. (See id. at 19.)

While Rodriguez supports many of his factual assertions with evidence on the record, these submissions are rebutted by Plaintiff's offerings. Plaintiff submits the deposition testimony of Lucrecia and Manuel. Their testimonies provide a different account of the events of April 22, 2008. Luz's parents both stated that when Domingo arrived at their home on April 22, Lucrecia called the police at Luz's behest. (See Docket Nos. 61-3 at 13, l. 9-11; 61-4 at 24, l. 24-25.) When the police arrived, Lucrecia explained that Luz had a protection order, that Domingo was mistreating her, and that he was threatening everyone at the home. (See Docket No. 61-3 at 15, l. 8-11.) She asked the officers to arrest Domingo because he was violating the order of protection. (See id. at l. 13-18.) Plaintiff also presents testimony from her deposition rebutting Rodriguez's assertion that she suffered no compensable injury as a result of the deaths of her mother and siblings. (See Docket No. 61-1 at 4-10.)

Plaintiff's opposition also calls into question the reliability of the evidence regarding Luz's continued relationship with Domingo. The court agrees with Plaintiff's assertion that much of the presented evidence documenting Luz's alleged relationship relies upon hearsay. (See Docket No. 62 at ¶¶ 15, 18, 19, 26, 35, 36.) Regardless, even if the jury were to find that Luz placed herself in danger by continuing a relationship with Domingo, such a ruling would not necessarily preclude the jury from also apportioning fault to Rodriguez for his allegedly negligent actions in failing to enforce

**Civil No. 09-1440 (GAG)**           10

the order of protection. See <u>Santiago v. Becton Dickinson & Co., S.A.</u>, 571 F. Supp. 904, 911 (D.P.R. 1983) (citing Article 1802 of the Civil Code, P.R. Laws Ann., Tit. 31, Sec. 5141 ("Concurrent imprudence of the party aggrieved does not exempt from liability, but entails a reduction of the indemnity.")). Based on the presented evidence, the court cannot rule that, as a matter of law, Plaintiff has no cause of action against Rodriguez. The presence of material issues of fact precludes the court from ruling that Plaintiff has summarily failed to state a claim under § 1802. See <u>Rivera v. DHL Global Forwarding</u>, 536 F. Supp. 2d 148, 157 (D.P.R. 2008) (denying summary judgment on plaintiff's Article 1802 claim when material issues of fact were recognized). Accordingly the court **DENIES** Rodriguez motion for summary judgment as to this issue.

### C. Qualified Immunity

Rodriguez contends that, regardless of whether he was negligent in failing to enforce the protection order on April 22, 2008, the doctrine of qualified immunity insulates him from civil liability for his actions. "The defense of qualified immunity has two aspects. An officer or employee not acting in good faith can be held liable; but, even when there is good faith, he is liable only if his action was unreasonable or if he should have known that it was illegal." <u>Acevedo v. Srio. Servicios Sociales</u>, 12 P.R. Offic. Trans. 317 (P.R. 1982) (citing <u>Procunier v. Navarette</u>, 434 U.S. 555, 562, 565 (1978); <u>Wood v. Strickland</u>, 420 U.S. 308, 321-22 (1975)). "Reasonability of the official act is a question of fact to be determined on a case by case basis." <u>Id.</u> As previously recognized, Plaintiff has presented evidence which conflicts with Rodriguez's account of the events of April 22, 2008. Plaintiff's demonstrated evidence is sufficient to create a material issue of fact with respect to the reasonableness of Rodriguez's actions in failing to enforce the order of protection in light of the presiding law. The court can therefore not summarily grant qualified immunity to Rodriguez in the present case. See <u>Jiminez v. Hernandez</u>, 2009 WL 161705 at * 4 (D.P.R. Jan. 21, 2009) (denying grant of qualified immunity when material facts were in dispute regarding the objective reasonableness of the defendant's actions).

### IV. Conclusion

Based on the foregoing, the court hereby **DENIES** defendant Rodriguez's motion for

**Civil No. 09-1440 (GAG)**                    11

summary judgment.

**SO ORDERED**

In San Juan, Puerto Rico this 27th day of April, 2011.


                                        *S/Gustavo A. Gelpí*

                                        GUSTAVO A. GELPÍ

                                        United States District Judge